IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Gary A. Creamer, ) | |
| ) | Civil Action No. 6:13-cv-2388-MGL-KFM |
| Plaintiff, ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| Major C. West; Sgt. Rivers; ) | |
| Sgt. D. Brown; Sgt. Sims; ) | |
| Sgt. Hayward; and Lt. Brayboy, ) | |
| Defendants. ) | |

The plaintiff, a state prisoner who is now represented by counsel, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

**PROCEDURAL HISTORY AND FACTS PRESENTED**

The above-captioned case was originally filed by the plaintiff when he was proceeding *pro se*. The plaintiff, then an inmate at the Ridgeland Correctional Institution, delivered the pleadings to prison officials for mailing on August 30, 2013 (doc. 1-2). The pleadings were received by the Clerk's Office in Greenville on September 3, 2013 (doc. 1 at 1). In the original complaint, the plaintiff alleged that he was harassed by prison officials and employees, was not allowed to eat in the prison cafeteria, was "beaten down" by guards on February 29, 2012, was placed in lockup, and was denied medical and dental care for his injuries (doc. 1).

In an order (doc. 9) filed in this case on September 17, 2013, the undersigned granted the plaintiff's motion for leave to proceed *in forma pauperis* and directed the plaintiff to submit a summons and Forms USM-285. The plaintiff did so on October 4, 2013 (doc. 12). On October 10, 2013, the undersigned by order (doc. 15) authorized service of process. Defendants Brayboy, D. Brown, Hayward, Rivers, Sims, and West on November 22, 2013, filed their answer (doc. 20) and answers to Local Civil Rule 26.01 DSC interrogatories (doc. 21). On December 23, 2013, the plaintiff filed a motion for an extension of time to file a response and a motion to appoint counsel. On January 3, 2014, the undersigned granted the motion for an extension of time and denied the motion to appoint counsel (doc. 24).

On January 14, 2014, attorney Joshua Thomas Hawkins filed a notice of appearance on behalf of the plaintiff (doc. 28). Counsel for the plaintiff on February 18, 2014, filed a motion to amend (doc. 35), which was granted on February 21, 2014 (doc. 40). The defendants filed an answer to the amended complaint with counterclaim for attorney's fees (doc. 41) on March 4, 2014, and filed a motion for summary judgment (doc. 46) on April 4, 2014. Counsel for the plaintiff filed his response in opposition to summary judgment (doc. 50) on April 19, 2014. Counsel for the defendants filed a reply (doc. 54) on June 2, 2014.

In the amended complaint, the plaintiff, *inter alia*, reiterates his allegations from the original complaint and also enumerates various causes of action: violation of the Fourth Amendment, Section 1983, and S.C. Const. art I, § 10 (doc. 35-1 at 4–5); wrongful failure to supervise (*id.* at 5–6); common law gross negligence and recklessness (*id.* at 6–7); assault (*id.* at 7); battery (*id.*); abuse of process (*id.*), outrage (*id.* at 7–8), malicious prosecution (*id.* at 8), and civil conspiracy (*id.*). In his prayer for relief, the plaintiff seeks a jury trial, actual damages, punitive damages, court costs, attorney's fees, and other relief deemed just and equitable (*id.*).

The defendants state that they seek summary judgment as a matter of law "because Plaintiff did not exhaust his administrative remedies (by dismissing his appeal through a plea and subsequently abandoning his appeal) and therefore his claim is barred" by the Prison Litigation Reform Act (doc. 46-1 at 1). The defendants *(1)* refer to the South Carolina Department of Corrections ("SCDC") grievance procedure, which is summarized in *Jones v. Kay*, C.A. No. 4:07-3480-SB, 2007 WL 4292416, at *5–6 (D.S.C. Dec. 5, 2007) (doc. 46-1 at 7–8); *(2)* note that the Supreme Court of the United States in *Booth v. Churner*, 531 U.S. 956, 741 n.6 (2001), has not "read exceptions into" the § 1997e(a) exhaustion requirement (doc. 46-1 at 8); *(3)* cite, *inter alia*, *Kearse v. Patterson*, C.A. No. 9:12-1704-MGL, 2013 WL 4511637, at *3 (D.S.C. Aug. 22, 2013), to indicate that where a prisoner has failed to pursue a step 2 appeal, failure to exhaust will not be excused (doc. 46-1 at 8); *(4)* and note that, under controlling Supreme Court and Fourth Circuit case law, any failure to apply the grievance procedure properly is not actionable under Section 1983 because there is no constitutional right to a grievance procedure (*id.* at 8–9).

Appended to the motion for summary judgment are the affidavit of Sgt. Ivan Rivers regarding the events of February 29, 2012, and a copy of an incident report (doc. 46-2); the affidavit of Lt. Dwayne Brown and an incident report relating to matters in the cafeteria (doc. 46-3); the affidavit of Major Charles West relating to the attempt to subdue the plaintiff on February 29, 2012 (doc. 46-4); an affidavit of Captain Gary Rogers[1] relating to the plaintiff's guilty plea and waiver of appeal on March 8, 2012, for refusing to obey a correctional officer and using obscene or vulgar language, the plaintiff's separate grievance (No. ECI-0429-12) relating to excessive force (doc. 46-5) and the

---

[1] Captain Rogers signed the affidavit as "G Rogers" (doc. 46-5 at 5). In his supplemental affidavit filed on June 2, 2014, Captain Rogers indicates that his first name is Guerry, not Gary (doc. 54-3 at 1).

dismissal of the plaintiff's step 2 appeal as untimely, and the plaintiff's grievance (No. ECI-0455-12); and an affidavit from Ann Hallman, Chief of the Inmate Grievance System, relating to the plaintiff's grievances (doc. 46-6). Copies of the various grievances and appeals are appended to the affidavits of Captain Gary Rogers and Ann Hallman (docs. 46-5, 46-6).

In response to the motion for summary judgment, the plaintiff alleges or contends: *(1)* the defendants "have presumably moved for summary judgment only as to the plaintiff's claim under federal law, and not the plaintiff's state law claims (doc. 50 at 3); *(2)* the plaintiff was not a "prisoner," as defined in 42 U.S.C. § 1997e(h), when the amended complaint was filed on February 18, 2014 (*id*.); *(3)* the defendants' motion is premature because discovery is not complete (*id.* at 3–4); *(4)* the step 2 document has conflicting dates  (*id.* at 4); *(5)* since the plaintiff was released from prison before the applicable statute of limitations, the parties need to engage in discovery to determine whether administrative remedies were even available to the plaintiff (*id.* at 5); *(6)* the Warden's violation of the SCDC grievance procedures through his failure to timely submit written responses and the "disappearance" of other grievances obviates the question of whether administrative remedies were available (*id.* at 6); *(7)* as to the attack upon the plaintiff by other inmates allegedly because of the defendants' effectuation, defendants have failed to produce the sixteen statements (*id.*); *(8)* summary judgment is improper as to the plaintiff's state law causes of action (*id.*); *(9)* several genuine issues of material fact exist (*id.*); *(10)* those genuine issues of material fact include tortious acts other than the incident on February 29, 2012, whether administrative remedies were actually available to the plaintiff, whether the plaintiff was led to believe that the events were resolved, and whether the plaintiff's step 2 appeal was timely filed (*id.* at 7–8); *(11)* if the plaintiff failed to exhaust, the failure is excused because defendants made it impossible for the plaintiff to exhaust (*id.* at 9–10); and (12) special circumstances, under *Giano v.*

*Gourd*, 380 F.3d 670 (2$^d$ Cir. 2004), exist (*id.* at 11).  Appended to the plaintiff's response is the plaintiff's affidavit (doc. 50-1).

In their reply brief, counsel for the defendants allege or contend: *(1)* the plaintiff's step 2 appeal was collected on May 11, 2012, but was due on May 9, 2012 (doc. 54 at 3); *(2)* the plaintiff's grievance would have been considered to be timely if received on May 10, 2012, but he did not submit it until May 11, 2012 (*id.* at 3–4); *(3)* the plaintiff admitted the charges filed against him and he waived his appeal rights (*id.* at 4); *(4)* the plaintiff's failure to exhaust is a two-part process (*id.*); *(5)* first, the plaintiff's guilty plea to the charges waives his appeal (*id.*); *(6)* "[b]ecause Plaintiff's grievance included allegations of employee misconduct, his guilty plea did not end his administrative remedy" (*id.*); *(7)* "[t]his is so because Plaintiff could have been guilty AND employee misconduct could have occurred" (*id.*); and *(8)* therefore, the second part of the plaintiff's administrative remedy required him to file a step 2 appeal, which he failed to do (*id.*). Appended to the reply brief is a supplemental affidavit from Ann Hallman, Chief of the SCDC Grievance Branch, relating to the collection of grievances (doc. 54-1).  In her affidavit, Ann Hallman states that grievances are collected "every day of the week" and that each Warden designates a specific person to collect grievances on at least a daily basis (*id.* at 1).

Also appended to the reply brief is the affidavit (doc. 54-2) of James Benjamin, who is the designee (or person designated by the Warden) for collecting grievances at the Evans Corrections Correctional Institution.  In his affidavit, Mr. Benjamin states that he personally collected the plaintiff's step 2 grievance ("appeal") on May 11, 2012 (*id.* at 2).  Mr. Benjamin also indicates that grievances are collected every day and that only extraordinary circumstances, such as a prison wide emergency, could prevent collection of grievances and that there were no such emergencies in May of 2012 (*id.*).  Also appended to the defendants' reply brief is the supplemental affidavit of

5

Captain Guerry Rogers concerning the prison disciplinary proceedings relating to the incident of February 29, 2012. (doc. 54-3).

## **GRIEVANCES**

The plaintiff filed his first grievance (No. ECI-0429-12) on February 29, 2012 (doc. 46-6 at 5–6). In the grievance, the plaintiff stated that: *(1)* during an altercation with officers, he was beaten down; *(2)* Sgt. Rivers kicked him in the face and broke his glasses, which the plaintiff had when he went through Reception and Evaluation; *(3)* the plaintiff wants the officer to replace his glasses, which cost $248; and *(4)* the plaintiff's state-issued glasses were not in his "stuff" delivered to the special management unit ("SMU") (*id.* at 5). In the "ACTION REQUESTED" portion of the grievance, the plaintiff requested replacement of his glasses (*id.*). On March 6, 2012, the institutional grievance coordinator ("IGC") responded to the plaintiff's grievance and apprised him that his grievance had been forwarded to the Division of Investigations ("DOI") for possible review (*id.*). The response from the IGC further states, "The time stated in GA-01.12, 'Inmate Grievance System' for responses are not applied to grievances sent to DOI" (*id.*).

On April 30, 2012, the Warden of the Evans Correctional Institution responded to the plaintiff's grievance, indicated that the DOI had found no evidence to substantiate the plaintiff's allegations against any SCDC employee, and apprised the plaintiff that he could appeal the Warden's decision within five days (doc. 46-6 at 6). The IGC signed the disposition on May 4, 2012, and the plaintiff acknowledged receipt on May 4, 2012 (*id.*).

The plaintiff's step 2 appeal is dated May 8, 2012 (doc. 46-6 at 7). In his step 2 appeal, the plaintiff wrote: *(1)* during an altercation with officers, the plaintiff was kicked in the face by Sgt. Rivers while he was handcuffed; *(2)* the plaintiff's glasses, which were listed on his inventory sheet, were broken; *(3)* Sgt. Rivers has been on leave and had surgery on his foot from kicking the plaintiff in the face; *(4)* it was later

determined that the plaintiff had a broken tooth; *(5)* although the step one decision indicated that there was no evidence to substantiate the plaintiff's allegations, it would only take looking at the incident report and the plaintiff's medical reports to substantiate his allegations; *(6)* the plaintiff has spoken to Warden Eagleton and the Associate Warden, who claimed that they have no knowledge that an investigation was done internally; *(7)* the plaintiff was released from SMU; *(8)* Captain and Rogers and Lt. Toms cannot deny what happened; and *(9)* this incident is trying to be covered up (doc. 46-6 at 7).

At the top right portion of the step 2 appeal, the grievance office listed the date of receipt as "5/11/12" (doc. 46-6 at 7). A similar notation appears on page 2 of the step one grievance (*id.* at 6).

The plaintiff signed informal resolution/administrative resolution documents on March 8, 2012, indicating that he agreed to waive a disciplinary hearing and all appeals (including appeals pursuant to *Al-Shabazz v. State*, 527 S.E.2d 742, 758 (S.C. 2000)), and would have disciplinary detention for twenty days with regard to the charges of refusing or failing to obey a correctional officer and using obscene or vulgar language, with which he was charged on February 29, 2012 (doc. 46-5 at 9, 11). The documents are cosigned by Captain Rogers (*id.*).

The plaintiff submitted a separate grievance (No. ECI-0455-12) on March 8, 2012. In that grievance, the plaintiff alleged: *(1)* on February 29, 2012, he was assaulted by Sgt. Rivers, Lt. Brayboy, Sgt. D. Brown, Sgt. Howard, and Major West when the plaintiff asked to speak to either a captain or a major about not being allowed to eat in the cafeteria because the plaintiff had "beat" a charge from Sgt. Cypress; *(2)* the plaintiff has four charges on him; *(3)* the plaintiff has been on SMU for nine days, but has not been given paperwork for being placed in lockup, which is in violation of SCDC policy (doc. 46-6 at 9). In the "ACTION REQUESTED" portion of the grievance, the plaintiff

requested that all charges be dismissed and that he released from lock-up (*id.*).  The institutional grievance coordinator replied to the plaintiff on April 12, 2012:

> Inmate Creamer,
> According to your disciplinary history all charges were dismissed, and you were later released to general population as requested. This grievance is being returned to you unprocessed.

(*Id.*).  The plaintiff did not file a step 2 appeal with respect to Grievance No. ECI-0455-12.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position

is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

In their motion for summary judgment, the defendants argue that the plaintiff has failed to exhaust his administrative remedies prior to commencing this action. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681. "[U]nexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. It also has the "potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.*

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006). As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89–90. This is especially true in a prison context. *Id.* at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91.

The court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12." *Malik v. Ward*, 8:08-cv-1886-RBH, 2010 WL 936777, at *2 n. 4 (D.S.C. Mar. 16, 2010). The policy is summarized as follows:

> After an unsuccessful attempt at informal resolution of the problem(s) by submission of a Request to Staff Member Form or by discussion of the complaint with the appropriate supervisor/staff, (1) an inmate must fill out a Form 10–5, Step 1, and give the form to an employee designated by the Warden (not the Inmate Grievance Coordinator) within fifteen days of the alleged incident; (2) the grievance must then be numbered and entered into SCDC's automated system within ten working days, and the Institutional Inmate Grievance Coordinator (IGC) notified; (3) the IGC must then, within ten working days, finalize the grievance in the system and attempt to informally resolve the issue; if the problem cannot be resolved informally, the IGC will conduct a complete investigation and make recommendations for disposition of the matter to the Warden; (4) the Warden must respond to the inmate, in writing, within forty days from the date the grievance was formally entered into the system by the IGC, then the IGC has five working days to serve the Step 1 response to the inmate; (5) the inmate may then appeal the Warden's response to the Division Director of Operations by completing a Form 10–5a, Step 2, and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; (6) the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal within another five "calendar days" and the Branch must present the Step 2 appeal to the responsible SCDC official, i.e. the Division Director of Operations, for a response; (7) the Division Director of

> Operations then has sixty days from the date the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, (8) the IGC has five days to serve the inmate with the Step 2 response.

*McFadden v. Reynolds*, C.A. No. 3:13-439-JMC-JRM, 2013 WL 1838656, at *3 n. 2 (D.S.C. April 11, 2013) (citing SCDC, Inmate Grievance System, GA–01.12, § 13.4 (Oct. 1, 2010)), *adopted by* 2013 WL 1838644 (D.S.C. May 1, 2013).

The plaintiff argues that the defendants' motion is premature because discovery is not complete. The plaintiff states that he served written discovery requests on the defendants on March 10, 2014, and the defendants' responses were due on April 29, 2014, which was after the plaintiff's deadline for filing a response to the motion for summary judgment. The plaintiff further states that efforts have been made to schedule depositions. The plaintiff argues that discovery is needed as to several disputed facts regarding the merits of his claims as well as the exhaustion of his administrative remedies, including the following: whether he submitted other grievances that were never addressed or processed; whether he was provided an opportunity to complete step 2 of those grievances; and, most importantly, with regard to Grievance No. ECI-0429-12 regarding the alleged beating he received on February 29, 2012, whether he timely submitted his step 2 grievance. The plaintiff notes that "May 8" is handwritten beside his name, and the due date, if the untimeliness of the Warden's response is ignored, is May 9 (*see* doc. 46-6 at 7). The plaintiff has stated that grievances are placed in a basket and are not necessarily processed the day they are filed by grievants, as reflected by the May 11 date used by office personnel and written in the "Office Use Only" section on the upper right-hand corner of the step 2 document (doc. 50-1, pl. aff. ¶ 7; *see* doc. 46-6 at 7). Thus, the plaintiff argues that the only way to glean knowledge related to this factual dispute is to depose the Warden, office personnel, and others who have knowledge

11

about how grievances are collected and the time lapse between the date on which grievants submit grievances and when grievances are actually reviewed and dated.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, given the questions of material fact that remain regarding whether the plaintiff has exhausted his administrative remedies, the undersigned recommends that the defendants' motion for summary judgment (doc. 46) on this basis be denied. The undersigned further recommends that the parties be given 45 days to complete discovery and that the defendant be given two weeks following the close of discovery in which to file a motion for summary judgment.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

August 18, 2014
Greenville, South Carolina