IN THE DISTRICT COURT OF THE UNITED STATES

DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Gary A. Creamer,<br><br>                              Plaintiff,<br><br>       vs.<br><br>Major C. West, Sgt. Rivers,<br>Sgt D. Brown, Sgt. Sims, Sgt.<br>Hayward, and Lt. Brayboy,<br><br>                             Defendants. | Civil Action No. 6:13-2388-MGL-KFM<br><br>**ORDER AND<br>REPORT OF MAGISTRATE JUDGE** |

        The plaintiff, a state prisoner who is represented by counsel, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

        On April 4, 2014, the defendants filed their first motion for summary judgment, arguing the plaintiff did not exhaust his administrative remedies (doc. 46). On April 19, 2014, the plaintiff filed his response (doc. 50). On August 8, 2014, the undersigned issued a report and recommendation recommending that summary judgment be denied based on the plaintiff's assertion that the motion was premature as discovery was needed on disputed facts regarding the merits of his claims as well as the exhaustion of administrative remedies (doc. 56 at 11). On September 9, 2014, the district court adopted the report and recommendation and denied the motion for summary judgment (doc. 57). Pursuant to the district court's order, the undersigned set a schedule for discovery and a deadline for

dispositive motions following the close of discovery (doc. 58). The parties requested an extension of discovery and the dispositive motions deadline, which the undersigned granted (doc. 63). The defendants filed a second motion for summary judgment addressing the exhaustion issue (doc. 69) on February 17, 2015. The defendants also filed a motion to dismiss Lt. Brayboy for lack of service (doc. 70) on February 19, 2015. The plaintiff filed a response in opposition to the motion to dismiss on February 22, 2015 (doc. 75) and a response in opposition to the motion for summary judgment on February 26, 2015 (doc. 83).

## **FACTS PRESENTED**

At the time of the facts alleged by the plaintiff in his amended complaint,[1] he was incarcerated at Evans Correctional Institution ("Evans") within the South Carolina Department of Corrections ("SCDC"). He has now been released from SCDC.

In his amended complaint, the plaintiff claims he was arbitrarily placed in lockdown and fed only one meal a day (doc. 35-1 at 2, amended comp.). He claims that on February 29, 2012, he was refused access to the cafeteria (*id.*). He claims he asked to speak to the correctional officers' superior and was escorted to "operations" (*id.*). When he arrived in operations, the plaintiff claims that defendants Brayboy, West, Rivers, Brown, Sims, and Howard beat him (*id.*). The plaintiff alleges that after he was handcuffed defendant Rivers kicked him in the face and broke his glasses (*id.* at 3). The plaintiff claims a tooth was broken and that medical personnel refused to remove the broken tooth, which caused an infection that he was later informed would cause him to lose all his teeth (*id.*).

---

[1]The plaintiff's counsel appeared in this case in January 2014 and, shortly thereafter, filed a motion to amend the complaint, which the defendants did not oppose (*see* docs. 35, 38). The undersigned granted the plaintiff's motion to amend on February 21, 2014 (doc. 40). The plaintiff thereafter did not separately file an amended complaint; however, the defendants filed an answer to the proposed amended complaint attached to the motion (doc. 35-1) on March 4, 2014, construing it as the amended complaint. The plaintiff also refers to that document as his amended complaint and, accordingly, the undersigned has as well.

2

The plaintiff alleges that, after this incident, he was placed in lockdown and slept on a metal cot with no mattress or covers for four days. He contends that he was seen by a physician on March 9, 2012. The plaintiff claims he spoke with Captain Rogers who stated that the charges against him "could disappear" if the plaintiff "should refrain from disagreement with officers in the future" (*id.*). The plaintiff claims he did not "acquiesce" to Captain Rogers' request, but "visited" Lt. Toms, who handled internal investigations (*id.*). The plaintiff claims he was subsequently informed that all charges would be dropped and he was returned to general population (*id.*).

The plaintiff alleges claims under the federal and state constitutions and 42 U.S.C. § 1983 for excessive force and deliberate indifference to serious medical needs, wrongful failure to supervise, negligence and gross negligence, assault, battery, abuse of process, outrage, malicious prosecution, and civil conspiracy (*id.* at 4-8).

As a result of the incident on February 29, 2012, the plaintiff was charged with refusing or failing to obey orders and using obscene, vulgar, or profane language and was placed in the special management unit ("SMU") ( (doc. 46-5, Rogers aff. ¶ 4; doc. 46-6, Hallman aff. ¶ 4). According to the affidavit of Captain Guerry Rogers, he met with the plaintiff on March 8, 2012, to discuss the charges (doc. 54-3, Rogers supp. aff. ¶ 4). The plaintiff pleaded guilty on that date to refusing or failing to obey orders and using obscene, vulgar, or profane language and received a determinate sanction of not more than 20 days in SMU (doc. 46-5, Rogers aff. ¶ 6; doc. 54-3, Rogers supp. aff. ¶ 4). The plaintiff was released from SMU on March 8th, based upon the sanctions imposed and the time already served (doc. 46-5, Rogers aff. ¶ 7). The plaintiff waived all of his rights of appeal from the charges and the right to participate in an administrative hearing (doc. 54-3, Rogers supp. aff. ¶ 5; doc. 46-5 at 9, 11, administrative resolution). The plaintiff had never been

adjudicated as not guilty of the charges against him based upon the events of February 29, 2012 (doc. 54-3, Rogers supp. aff. ¶ 6).

In the SCDC, grievances are collected every day of the workweek by a specific person (the "Designee") assigned by the Warden of each facility (doc. 54-1, Hallman supp. aff. ¶ 4). The Designee is a disinterested person who does not report to anyone in the Grievance division (*id.*; doc. 54-2, Benjamin aff. ¶ 6). Inmates, including those in administrative segregation, are allowed to submit grievances at any time of the day or night (doc. 54-1, Hallman supp. aff. ¶ 5). SCDC allows inmates until midnight to comply with grievance deadlines (*id.* ¶ 7).

In the plaintiff's case, both his Step 1 and Step 2 grievances were collected by Designee James E. Benjamin (doc. 54-2, Benjamin aff. ¶¶ 7-8). Benjamin's initials are added to a date stamp on each grievance documenting the day it was received (*id.* ¶ 5). Inmates are given complete control over the content of their grievances, to include any date they wish to write on the grievance (doc. 54-1, Hallman supp. aff. ¶ 8). The collection process is designed only to independently document the receipt of a grievance (*id.*).

The plaintiff signed and dated a Step 1 grievance "February 29, 2012" (doc. 46-6 at 5, Step 1 grievance). In the grievance (ECI-0429-12), the plaintiff alleged that, during an altercation with officers, he was beaten and Sgt. Rivers kicked him in the face and broke his glasses. He asked that the officer replace his glasses, which cost $248, and alleged that his state-issued glasses were not in his "stuff" delivered to the SMU (*id.* at 5). In the "ACTION REQUESTED" portion of the grievance, the plaintiff requested replacement of his glasses (*id.*).

Designee Benjamin collected the plaintiff's grievance on March 5, 2012, and stamped that date on the grievance along with his initials (doc. 54-2, Benjamin aff. ¶ 7). On

March 6, 2012, the institutional grievance coordinator ("IGC") responded to the plaintiff's grievance and apprised him that his grievance had been forwarded to the Division of Investigations ("DOI") for possible review (doc. 46-6 at 5, Step 1 grievance). The response from the IGC further states, "The time stated in GA-01.12, 'Inmate Grievance System' for responses are not applied to grievances sent to DOI" (*id.*).

The plaintiff received the Warden's response to the Step 1 grievance on May 4, 2012 (*id.* at 6). The Warden stated that DOI had returned the grievance finding that no evidence had been presented to substantiate the plaintiff's allegations against any SCDC employee, and an investigation was not warranted. Accordingly, the grievance was denied (*id.*). The plaintiff was further notified that he had five days from receipt of the Warden's response to submit a Step 2 grievance. The plaintiff signed for receipt of the response and dated his signature May 4, 2012 (*id.*; *see* doc. 50-1, pl. aff. ¶ 6 (acknowledging receipt of Warden's denial on May 4, 2012)).

In his affidavit submitted in support of his opposition to the defendants' first motion for summary judgment, the plaintiff contends that "Evans did not follow SCDC Grievance Procedures because . . . the Warden should 'respond to the grievant' within 40 days. . . . I was not provided a copy of the Warden's denial until May 4, 2012, more than two months after I filed a grievance" (doc. 50-1, pl. aff. ¶ 6).

The plaintiff's Step 2 grievance was due on May 9, 2012 (doc. 54-1, Hallman supp. aff. ¶ 9). Designee Benjamin states in his affidavit that he collected the plaintiff's Step 2 grievance on Friday, May 11, 2012, as documented by the date-stamp initialed by Benjamin (doc. 54-2, Benjamin aff. ¶ 8; doc. 54-2 at 3, Step 2 grievance). Friday, May 11, 2012, was a normal work day at Evans (doc. 54-1, Hallman supp. aff. ¶ 6). The grievance was dismissed for failure to timely file the Step 2 grievance (doc. 46-6, Hallman aff. ¶ 8).

5

The plaintiff states in his affidavit that he placed his Step 2 grievance "in 'the basket' provided for the collection of grievance documents on or near May 8, 2012" (doc. 50-1, pl. aff. ¶ 7).

On March 8, 2012, during the pendency of the plaintiff's first Step 1 grievance and on the same day he pleaded guilty to the disciplinary charges against him and was released from SMU, the plaintiff signed a second Step 1 grievance (ECI-0455-12) alleging "I was placed in SMU on February 29 without knowing why[.] I was assaulted by Sgt. Rivers, Lt. Brayboy, Sgt. D. Brown, Sgt. Howard, Major West when I simply ask to speak on either a Captain or Major about situations where officers of the cafeteria had been . . . not allowing me to eat . . . ." The plaintiff complained that no form was given to him to show why he was placed in SMU, and he requested that all charges against him be dismissed and that he be released from lockup (doc. 46-6, Hallman aff. ¶ 13; doc. 46-6 at 9, 2nd Step 1 grievance). On April 12, 2012, the IGC responded to the grievance, stating, "According to your disciplinary history all charges were dismissed, and you were later released to general population as requested. This grievance is being returned unprocessed" (doc. 46-6 at 9, 2nd Step 1 grievance). As set forth above, the charges had not been dismissed as the plaintiff pleaded guilty on March 8, 2012, and, therefore, the reason noted for the return of the grievance unprocessed was in error (doc. 46-6, Hallman aff. ¶ 14). The grievance was properly denied because the plaintiff waived his right to file a grievance or appeal regarding the charges when he pleaded guilty to refusing or failing to obey orders and using obscene, vulgar, or profane language and consented to an administrative remedy on March 8, 2012, (*id.* ¶ 16; *see* doc. 46-5 at 9, 11, administrative resolutions). With regard to any claims in this second Step 1 grievance as to the events of February 29, 2012, the plaintiff already had a pending grievance (ECI-0429-12) arising out of the same events and had already

received the IGC's response to that grievance stating that it had been forwarded to the DOI (doc. 46-6 at 5, Step 1 grievance). Accordingly, the second Step 1 grievance was also properly denied on this basis (doc. 46-6, Hallman aff. ¶ 17).

## **APPLICABLE LAW AND ANALYSIS**

*Motion for Summary Judgment*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise,

7

conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. at 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741(2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative

remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir.1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process).  Exhaustion is a prerequisite to suit that must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir.2005).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson*, 407 F.3d at 681. However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

"The court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12." *Malik v. Ward*, 8:08-cv-1886-RBH, 2010 WL 936777,

9

at *2 n.4 (D.S.C. March 16, 2010). The defendants have summarized the parameters of the SCDC grievance policy at the time the plaintiff filed his grievances as follows:[2]

> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;
>
> (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;
>
> (3) the Warden should respond to the grievant in writing within forty (40) days;
>
> (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
>
> (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.
>
> *See* SCDC Policy GA-01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter.

(Doc. 46-1 at 7-8) (citing *Jones v. Kay,* C.A. No. 07-3480-SB, 2007 WL 4292416, at *5 (D.S.C. Dec. 5, 2007)).

The defendants argue that the plaintiff has failed to exhaust his administrative remedies first by failing to timely file a Step 2 grievance. The undersigned agrees. The evidence before the court is that the plaintiff received the Warden's response to the Step 1 grievance on May 4, 2012 (doc. 46-6 at 6, Step 1 grievance; *see* doc. 50-1, pl. aff. ¶6

---

[2]The grievance policy has been recently amended to require filing of a Step 1 grievance within five working days of the alleged incident, among other changes. *See* SCDC Policy/ Procedure, Inmate Grievance System, GA–01.12, § 13 (May 12, 2014) (available at http://www.doc.sc.gov/pubweb/policy/policy.jsp).

(acknowledging receipt of Warden's denial on May 4, 2012)).  The grievance policy is clear and unambiguous that a Step 2 grievance must be filed within five days of receipt of the Warden's response to the Step 1 grievance.  The plaintiff was, in fact, notified in the Warden's response that he had five days from the receipt of the response to submit a Step 2 grievance (doc. 46-6 at 6, Step 1 grievance).  There is no dispute that the plaintiff's Step 2 grievance was due on May 9, 2012 (doc. 54-1, Hallman supp. aff. ¶ 9).

Designee Benjamin states in his affidavit that he collected the plaintiff's Step 2 grievance on Friday, May 11, 2012, as documented by the date-stamp initialed by Benjamin (doc. 54-2, Benjamin aff. ¶ 8; doc. 54-2 at 3, Step 2 grievance).  Friday, May 11, 2012, was a normal work day at Evans (doc. 54-1, Hallman supp. aff. ¶ 6).  The plaintiff states in his affidavit that he placed his Step 2 grievance "in 'the basket' provided for the collection of grievance documents *on or near* May 8, 2012" (doc. 50-1, pl. aff. ¶ 7 (emphasis added)).  The plaintiff has failed to offer any evidence to support his self-serving contention, which in and of itself does not necessarily contradict the defendants' evidence.[3]  Accordingly, the plaintiff has failed to create a genuine issue of material fact to survive summary judgment.  *See Fleming v. Gault*, C.A. No. 6:13-3375-MGL-JDA, 2015 WL 1021132, at *7 (D.S.C. March 9, 2015) (citing *Malik v. Sligh*, C.A. No. 5:11–cv–01064–RBH, 2012 WL 3834850, at *4 (D.S.C. Sept.4, 2012) (holding that the plaintiff's self-serving contention that he submitted a grievance was "simply not enough to create a genuine dispute as to any material fact")).

The plaintiff appears to argue that the Warden's response to the Step 1 grievance was late and that this excuses any late submission of the Step 2 grievance (doc.

---

[3]Taking the plaintiff's statement as true, he very well could have submitted the Step 2 grievance on May 11, 2012, which is "near" May 8, 2012.

11

83 at 7-8). However, it is uncontradicted that the grievance policy provides that the Warden "should" respond to the Step 1 grievance within 40 days (doc. 54-1, Hallman supp. aff. ¶ 11). Failure to respond within this time period does not in any way invalidate the grievance process (*id.*). In this case, because of the plaintiff's allegations of employee misconduct, the Step 1 grievance was forwarded to the DOI. The IGC's response to the Step 1 grievance specifically stated that "[t]he time stated in GA-01.12, 'Inmate Grievance System' for responses are not applied to grievances sent to DOI" (doc. 46-6 at 5, Step 1 grievance). Accordingly, the plaintiff has failed to show that the Warden's delay in responding to the Step 1 grievance due to the review by the DOI in any way impeded his filing of a Step 2 grievance within five days of his receipt of the Warden's response on May 4, 2012.

In his response to the motion, the plaintiff argues that he is not a prisoner and was not a prisoner at the time he filed his amended complaint (doc. 83 at 4). Thus, he claims that the PLRA's exhaustion requirement in 42 U.S.C. 1997e does not apply to him. This claim is meritless as the plaintiff was a prisoner when he filed this action (*see* doc. 1 at 2, comp.). The Fourth Circuit has stated that "it is the plaintiff's status at the time he filed the lawsuit that is determinative as to whether the § 1997e(a) exhaustion requirement applies." *Cofield v. Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007) (citing *Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir.2005)). *See Branham v. Bryant*, C.A. No. 1:11-1246-JFA, 2013 WL 1194843, at *2-3 (D.S.C. Mar. 22, 2013) (holding the PLRA exhaustion requirement applied to a plaintiff who was released on bond shortly after the alleged injury but was incarcerated at the time of filing of complaint); *Chase v. Peay*, 286 F.Supp.2d 523, 527 (D. Md. 2003) (holding that "critical question is not whether the . . . grievance process currently is available to [the plaintiff], but rather whether those remedies were available to him . . . at the time when he filed this suit in federal court").

12

The plaintiff further argues that the defendants' motion is premature as discovery is not complete (doc. 83 at 9). The plaintiff contends that he "needs to depose the Warden and possibly other witnesses in order to determine what obstacles there may have been for prisoners to utilize . . . the prison's administrative process" (*id.* at 10). He further contends that he needs to depose "the Warden, office personnel, and others who have knowledge about how grievances are collected and the time lapse between the date on which grievants submit grievances and when grievances are actually reviewed and dated" (*id.* at 10-22). As discussed above, the defendants' first motion for summary judgment was denied nearly a year ago to give the parties an opportunity to pursue discovery both on the exhaustion issue and as to the merits of the plaintiff's claims. The plaintiff notes that he has received written discovery responses and has taken the depositions of five of the six defendants[4] (*id.*). Moreover, the defendants state that the plaintiff requested a site visit at Evans, which occurred on July 15, 2014, and was given the opportunity to speak with Designee Benjamin and one of the two grievance coordinators working at Evans. The other grievance coordinator was not at work that day (doc. 71 at 2). Discovery in this case ended on February 2, 2015. Clearly the plaintiff has had every opportunity to pursue discovery – particularly on the exhaustion issue, which is the only issue before the court at this time.

With regard to the grievances the plaintiff's states he filed in regards to being denied food "on several occasions" and being forced by "medical personnel at Evans" "to wait six months to have a tooth removed and refused to repair glasses . . ." (doc. 50-1, pl. aff. ¶¶ 8-10), the only named defendants in the amended complaint are those correctional

---

[4]As will be discussed below, Lt. Brayboy has not been served with the summons and complaint.

officers the plaintiff alleges beat him on February 29, 2012 (doc. 35-1 at 2, amended comp.). The plaintiff makes no factual allegations against these defendants as to denial of food and medical care (*see generally*, doc. 35-1, amended comp.). Furthermore, the plaintiff argues as follows in his response in opposition to the motion for summary judgment:

> The defendants seem to take the position that the only incident giving rise to this action occurred on February 29, 2012. The plaintiff also stated in his affidavit that after guards sent other inmates to attack him, he was denied medical treatment for a significant period of time.

(Doc. 83 at 10). While the plaintiff indeed made this allegation in his affidavit (doc. 50-1, pl. aff. ¶ 5), the plaintiff made no such allegation in his amended complaint (*see generally*, doc. 35-1, amended comp.). Further, the plaintiff states in his affidavit that "[s]everal instances of wrongful conduct by the defendants, and not just instances that occurred on February 29, 20[12], have caused me to be damaged and are the basis of this lawsuit" (doc. 50-1, pl. aff. ¶ 12). However, as noted above, the only factual allegations in the amended complaint against the named defendants arise from the February 29, 2012, incident (*see* generally, doc. 35-1, amended comp.). The law is clear that personal participation of a defendant is a necessary element of a Section 1983 claim against a government official in his individual capacity. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

To the extent the plaintiff contends that the defendants "knowingly charged the plaintiff without cause to harass and retaliate against the plaintiff" in violation of his constitutional rights (doc. 35-1, amended comp. at 4), the defendants have submitted uncontradicted documentary evidence that the plaintiff pleaded guilty on March 8, 2012, to the charges of refusing or failing to obey orders and using obscene, vulgar, or profane

language and received a determinate sanction of not more than 20 days in SMU (doc. 46-5, Rogers aff. ¶ 6; doc. 54-3, Rogers supp. aff. ¶ 4). The plaintiff was released from SMU on that same date, based upon the sanctions imposed and the time already served (doc. 46-5, Rogers aff. ¶ 7). The plaintiff waived all of his rights of appeal from the charges and the right to participate in an administrative hearing (doc. 54-3, Rogers supp. aff. ¶ 5; doc. 46-5 at 9, 11, administrative resolutions). The plaintiff had never been adjudicated as not guilty of the charges against him based upon the events of February 29, 2012 (doc. 54-3, Rogers supp. aff. ¶ 6). The plaintiff cannot recover damages in a Section 1983 civil rights claim for an allegedly unconstitutional conviction without first having that conviction reversed, expunged, or called into question by a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). The rule in *Heck* applies to prison disciplinary convictions as well as criminal ones. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

In his amended complaint, the plaintiff added Evans Correctional Institution as a defendant (*compare* doc. 1, comp. *with* doc. 35-1, amended comp.). Evans is not a person subject to suit under 42 U.S.C. § 1983. "Inanimate objects – such as buildings, facilities, and grounds – do not act under color of state law." *Jones v. Lexington Cnty. Det. Ctr.*, 586 F. Supp. 2d 444, 451 (D.S.C. 2008).

Having found that the defendants are entitled to summary judgment regarding the plaintiff's Section 1983 claims based upon his failure to exhaust administrative remedies, it is recommended that the court decline to exercise supplemental jurisdiction over the plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3).

In their answer to the amended complaint (doc. 41), the defendants assert a counterclaim alleging that this lawsuit is frivolous and that they are entitled to recover attorney fees and costs pursuant to 42 U.S.C. § 1988. The defendants do not address the

counterclaim in their motion for summary judgment. A prevailing defendant may obtain attorney's fees under 42 U.S.C. § 1988 if the plaintiff's claim "'was frivolous, unreasonable or groundless.'" *Lotz Realty Co. v. U.S. Dep't of Housing and Urban Dev.*, 717 F.2d 929, 931 (4th Cir. 1983) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). No such showing has been made here. Accordingly, the defendants' counterclaim should be dismissed as well.

Based upon the foregoing, the undersigned recommends that the defendants' second motion for summary judgment be granted. Should the district court adopt this recommendation, the motion to dismiss Lt. Brayboy for lack of service of process will be rendered moot. Should the district court deny the motion for summary judgment, the undersigned recommends that the motion to dismiss Lt. Brayboy be denied as discussed below.

***Motion to Dismiss Lt. Brayboy***

The defendants have moved to dismiss Lt. Brayboy without prejudice for lack of service of process under Federal Rule of Civil Procedure 4(m), which provides that a plaintiff must serve a defendant "within 120 days after the complaint is filed." Fed. R. Civ. P. 4(m). If a defendant is not served within that time, "the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id*. "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*. In *Malibu Media, LLC v. Doe*, the United States District Court for the District of Maryland recently acknowledged the "continuing ambiguity as to whether Rule 4(m) provides any latitude to the district court in granting a motion to extend time to effectuate service in the absence of good cause." C.A. No. WMN-14-3384, 2015 WL 2345547, at *2 (D. Md. May 14, 2015).

Proceeding *pro se*, the plaintiff filed this action on September 3, 2013 (doc. 1). Service by the United States Marshals Service ("USMS") was authorized on October 10, 2013, and summonses were issued as to all defendants, including Lt. Brayboy (docs. 15, 17). The plaintiff was specifically advised as follows:

> Plaintiff must provide, and is responsible for, information sufficient to identify Defendants on the Forms USM-285. The United States Marshal cannot serve an inadequately identified defendant. Unserved Defendants may be dismissed as parties to this case if not served within the time limit governed by Rule 4(m) and this order.

(Doc. 15 at 2). The Clerk of Court was also instructed to "calculate the 120-day period for service of process under Rule 4(m) from the date on which the summonses are issued" (*id.* (citing *Robinson v. Clipse*, 602 F.3d 605, 608–09 (4th Cir. 2010) (tolling during initial review)). On November 21, 2013, the summonses were returned executed as to all defendants except Lt. Brayboy (doc. 19). On November 22, 2013, the defendants filed an answer in which they asserted lack of proper service as a defense (doc. 20 at 2).

On January 14, 2014, attorney Joshua Thomas Hawkins entered an appearance on the plaintiff's behalf (doc. 28). On February 18, 2014, the plaintiff's counsel filed a motion to amend the complaint (doc. 35), which was granted on February 21, 2014 (doc. 40). On March 4, 2014, the defendants answered the amended complaint asserting, *inter alia*, lack of proper service (doc. 41 at 3). On March 19, 2014, the summons for Lt. Brayboy was returned unexecuted with the notation "unable to locate 'Lt. Brayboy.' No longer employed at SCDC" (doc. 45; *see also* doc. 47). The defendants' motion to dismiss Lt. Brayboy for lack of service of process was filed nearly a year later on February 19, 2015 (doc. 70). The defendants state that the plaintiff has never asked that Lt. Brayboy waive

service under Federal Rule of Civil Procedure 4(d), and Lt. Brayboy has not agreed to waive service of process (*id.* at 2).

Here, the time period for service ran on February 7, 2014, using the date the summonses were issued as the start date pursuant to *Robinson*, 602 F.3d at 608–09.  The plaintiff's counsel argues that defense counsel has represented Lt. Brayboy throughout this litigation and has not raised issues related to this defendant until the parties scheduled depositions.  At that time, defense counsel told the plaintiff's counsel that Lt. Brayboy was in the military and had been deployed (doc. 75 at 1).  The plaintiff's counsel notes that Lt. Brayboy is the most important witness other than the plaintiff and further notes that the defendants did not raise any specific issues related to service on Lt. Brayboy in the answer to the amended complaint, other than "the broad, sweeping assertion in paragraph 19 about 'defendants,' but Brayboy is not mentioned, and Brayboy is the only defendant defense counsel has moved to dismiss" (*id.* at 1-2).  The plaintiff asks that the court deny the motion to dismiss as "contra to justice and equity" (*id.* at 2).

Here, given the plaintiff's *pro se* status when he filed the complaint, the alleged importance of Lt. Brayboy to the merits of the case, and defense counsel's representation of Lt. Brayboy throughout this litigation, the undersigned recommends that, if the district court denies the defendants' motion for summary judgment, the motion to dismiss Lt. Brayboy for lack of service of process should also be denied, and the time period for service should be extended by an appropriate period.

**CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' second motion for summary judgment for failure to exhaust administrative remedies (doc. 69) be granted, which would render the defendants' motion to dismiss Lt. Brayboy for lack of service of process (doc. 70) moot.  Should the district court deny the defendants' motion for summary judgment, the defendants' motion to dismiss Lt. Brayboy should be denied, and the time period for service should be extended, as discussed above. Furthermore,

Based upon the foregoing recommendation,

IT IS ORDERED that the plaintiff's second motion to amend scheduling order (doc. 66) and the defendants' motion to change venue (doc. 68) are denied.  Should the district court deny the defendants' motion for summary judgment, the parties are granted leave to refile their motions within five days of the district court's order.

The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

July 31, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

A rThe parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).